## MORGAN v. HEDGES.

THIS case will be found reported in volume four, Colorado Reports, at page 526. The following dissenting opinion of STONE, Justice, was inadvertently omitted by the reporter, in the preparation of that volume.

STONE, J.   I cannot agree with the majority of the court, in their conclusion, that the facts in this case warrant the affirmance of the judgment.   The written contract between the parties bears internal evidence of having been drawn up without the aid of a lawyer, and, as is generally the result in such cases, is a rather blind and uncertain instrument, calculated to give rise to dispute and consequent litigation.

From the contract, however, such as it is, it is manifest that the plaintiff and defendant were tenants in common of the crops in controversy, although it was not the crops themselves, but the net proceeds after sale thereof, that were to be shared between them.

It is agreed that under the contract Morgan was entitled to the possession of the crops when matured, for the purpose of selling them, and that unless the right of possession was divested by some subsequent change of the contract, he was entitled to judgment for such possession under the writ.   In order to change the terms of a written contract, by a subsequent verbal agreement, the latter should be unmistakable in its character, and wholly consistent with the intent of the parties, as manifested by the interpretation which they themselves put upon it by their acts in carrying it out.

In my opinion neither of these conditions can be said to appear from the evidence.   No evidence was submitted on behalf of the defendant, so there is no dispute as to the facts in the case.   The exact time when Morgan left the place is not stated, but since it was after the grasshoppers had ravaged the crops " during the season," we may infer that it was towards

the end of the growing season. There could have been little, if anything, left for Morgan to do under the contract, until the crop was ready to sell. Be this as it may, Hedges assented to Morgan's leaving. If then by reason of his going away, he failed to perform any part of the contract, which by its terms he was bound to perform, it was waived by Hedges in assenting to such modification of the contract. There was no express relinquishment of Morgan's right of possession. Was it implied, and if so from what? Examine that portion of Morgan's testimony quoted in the opinion of my brethren, as the premises from which they hold that the jury might deduce the implication that Morgan abandoned his right of possession. " During the season the grasshoppers destroyed nearly all we had at that time; the prospect was gloomy; there was some hay, corn and onions left; I then told defendant I would go to Rosita, and that he should do what he could with what hay and corn was left, so that I should get out of them what money I had advanced. He said that he would do the best that he could, and that I should have the money back that I had advanced out of what should be left; that he had now a house to live in, and would have no rent to pay, and that he could haul wood to town to support himself through the winter. I then went to Rosita."

There is no direction here to Hedges, either express or implied, to sell the crop. He was asked to do what he could with the crops that were left, so that Morgan should get his money out of them. What did this mean? Obviously, that Hedges, who under the contract was to do the work of cultivation, should go on with such work, care, cultivation and harvesting of the crops, so that Morgan himself could get his money out of them. Now let us see what interpretation the parties themselves put upon this " modification of the agreement." Morgan further testifies: " When the corn and hay were ready for market, I sent Mr. Platt as my agent to go and sell the crops, as I considered this a part of my duty under the contract. Mr. Platt sent four loads of corn, with

defendant's consent, to Rosita to me, which weighed all together 7,750 pounds, in the ear, and was worth two cents per pound. Defendant brought up two of those loads himself." And upon the same point Platt testifies: "When the crop was ripe, he (Morgan) gave me authority as his agent to take control of the property described in the writ in this suit, and sell the same. Acting under his authority, I took control of the property, and the defendant made no objection at that time. I sent four loads of corn to Rosita to the plaintiff, with defendant's consent, and defendant took two of them up himself."

It cannot be denied that up to this time both parties acted upon the terms of the original contract relating to Morgan's right of possession and sale of the crops. If Morgan had intended such abandonment, why did he assume to take possession at all? And if Hedges understood that such was the intention, why did he not object when Morgan first asserted his right of possession? Why did Hedges assent to this right, deliver a part of the goods without protest or reserve, and actually aid in transporting them to Morgan? These acts of both parties are utterly inconsistent with the conclusion that Morgan had relinquished his right of possession under the contract, or that Hedges ever so understood it. I do not merely claim that the most reasonable implication that the jury might have drawn from the evidence in the case is that Morgan's right of possession to the property was never divested. I take the ground that upon the written contract and the subsequent declarations and acts of the parties, no other implication can arise, and any other conclusion is shut out; that the verdict is unwarranted and unsupported by any evidence whatever, or reasonable inference. That Morgan would rent a farm at his own cost, advance $675 in the purchase of implements and seed, and for the support of Hedges and his family during the whole summer, agree that Hedges should not be liable for any losses, work himself the most of the summer, and then without consideration abandon his right of possession of the entire crop, and his chance of ever getting a dollar, is to my mind

most absurd. And to conclude that he did so intend, in the face of a written contract, unaltered by express words, and upheld by the acts of both parties, seems to me equally unreasonable. One other scrap of the evidence I cannot refrain from throwing into the scales of justice: Platt testifies: "Defendant told me that he had hauled away four loads of hay off the place, but I inquired, and found out that he had hauled away eight loads. The loads weighed about one ton each, and was worth about $13 or $14 per ton." The defendant made no attempt to contradict this evidence, and therefore stands as having added dishonesty and falsehood to wrong. A question arising upon the pleadings in this case, which was presented in the arguments of counsel, I deem of sufficient importance to notice.

To the declaration in replevin that the defendant wrongfully *detained* the property in controversy, the defendant pleaded *non detinet* and property in himself. Issue was joined upon these pleas, trial had, and verdict for the defendant; motion for new trial overruled, and judgment of *retorno habendo* awarded, from which plaintiff appeals to this court.

Instead of *non detinet*, the plea should properly have been *non detinuit*. The plea of *non detinet* was proper only when formerly the action was to recover the value of the goods, and damages where the goods were still retained by the defendant. This form of the action is now obsolete, the property being taken by the officer upon suing out the writ, and delivered to the plaintiff who sues for possession of the same. The declaration in such case (where a wrongful detention is the gist of the action), is that the defendant wrongfully detained the goods, " until," &c., that is, until they were replevied. Hence, to be responsive to such allegation, the plea should be that the defendant did not detain the goods, &c. 1 Chitty's Pl. Tit. Replevin.

Since the plaintiff joined issue upon this plea, the most that can be said of it is, that it raised an immaterial issue; but this cannot be considered important while the plea of property in

defendant was also pleaded.   As to this latter plea, is is contended that thereunder the burden of proof was upon the defendant.   We think this is not the rule.   It seems well settled that this plea, where the plaintiff's right of possession is traversed therein, is mere inducement to the traverse of the right of property in the plaintiff.   In the case before us, the record shows the plea of property in defendant to be in the usual and correct form at common law, and is in effect a special or formal traverse, averring, by way of inducement, property in defendant, and traversing, under the *absque hoc*, the plaintiff's allegation of ownership in the property.   The question raised by such plea, is not whether the property is in the defendant, but whether the right of property, and the right to immediate possession at the time when, &c., was in the plaintiff; and the *onus* is therefore upon him to show such right of possession. *Reynolds* v. *McCormick.* 62 Ill. 415.